Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMIR WILLIAMS,<br><br>　　Plaintiff,<br><br>　　v.<br><br>HOUGHTON MIFFLIN HARCOURT COMPANY, JOHN J. LYNCH, JR., LAWRENCE K. FISH, JEAN-CLAUDE BRIZARD, L. GORDON CROVITZ, JEAN S. DESRAVINES, JILL A. GREENTHAL, JOHN F. KILLIAN, JOHN R. MCKERNAN, JR., and TRACEY D. WEBER,<br><br>　　Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Amir Williams ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.　　This is an action against Houghton Mifflin Harcourt Company ("Houghton," "HMH," or the "Company") and its Board of Directors (the "Board" or the "Individual

1

Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Houghton by certain affiliates of The Veritas Capital Fund VII, L.P. ("Veritas").

## JURISDICTION AND VENUE

2.   The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.   In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.   Plaintiff is, and has been at all relevant times hereto, an owner of Houghton common stock.

7. Defendant Houghton is a learning technology company that provides curriculum, supplemental, intervention solutions, and professional learning services worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "HMHC."

8. Defendant John J. Lynch, Jr. ("Lynch") is President, Chief Executive Officer, and a director of the Company.

9. Defendant Lawrence K. Fish ("Fish") is Chairman of the Board of the Company.

10. Defendant Jean-Claude Brizard ("Brizard") is a director of the Company.

11. Defendant L. Gordon Crovitz ("Crovitz") is a director of the Company.

12. Defendant Jean S. Desravines ("Desravines") is a director of the Company.

13. Defendant Jill A. Greenthal ("Greenthal") is a director of the Company.

14. Defendant John F. Killian ("Killian") is a director of the Company.

15. Defendant John R. McKernan, Jr. ("McKernan") is a director of the Company.

16. Defendant Tracey D. Weber ("Weber") is a director of the Company.

17. Defendants Lynch, Fish, Brizard, Crovitz, Desravines, Greenthal, Killian, McKernan, and Weber are collectively referred to herein as the "Individual Defendants."

18. Defendants Houghton and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On February 22, 2022, Houghton announced that it had entered into a definitive merger agreement with certain affiliates of Veritas for the acquisition of the Company. Pursuant to the terms of the agreement, Houghton shareholders will be entitled to receive $21.00 in cash per

share through a tender offer. The press release announcing the Proposed Transaction states, in pertinent part:

### Houghton Mifflin Harcourt to be Acquired by Veritas Capital

Shareholders to Receive $21 per Share Through a Cash Tender Offer

NEWS PROVIDED BY
**Houghton Mifflin Harcourt**
Feb 22, 2022, 06:00 ET

BOSTON, Feb. 22, 2022 /PRNewswire/ -- Houghton Mifflin Harcourt Company (Nasdaq: HMHC) ("HMH," or the "Company"), a learning technology company, today announced that it has entered into a definitive merger agreement with certain affiliates of Veritas Capital ("Veritas"), a leading private investment firm, for the acquisition of the Company.

Pursuant to the terms of the agreement, HMH shareholders will be entitled to receive $21 in cash per share through a tender offer. The per share purchase price represents a 36% premium to the Company's unaffected share price as of January 13, 2022 and implies an equity value of approximately $2.8 billion.

*   *   *

The agreement was unanimously approved by HMH's Board of Directors. The transaction is expected to be completed in the second quarter of 2022, subject to receipt of requisite regulatory approvals and satisfaction of customary closing conditions.

Evercore served as financial advisor, and WilmerHale served as legal counsel to HMH. Milbank LLP acted as legal advisor to Veritas. Bank of America, JPMorgan Chase Bank, N.A., Deutsche Bank and Macquarie Capital are providing committed financing for the proposed transaction.

*   *   *

**About HMH**
Houghton Mifflin Harcourt (Nasdaq: HMHC) is a learning technology company committed to delivering connected solutions that engage learners, empower educators and improve student outcomes. As a leading provider of K–12 core curriculum, supplemental and intervention solutions, and professional learning services, HMH partners with educators and school districts to uncover solutions that unlock students' potential and extend teachers' capabilities. HMH serves more than 50 million students and four million educators in 150 countries. For more information, visit www.hmhco.com.

> **About Veritas Capital**
>
> Veritas is a longstanding technology investor with a focus on companies operating at the intersection of technology and government. The firm invests in companies that provide critical products, software, and services, primarily technology and technology-enabled solutions, to government and commercial customers worldwide. Veritas seeks to create value by strategically transforming the companies in which it invests through organic and inorganic means.
>
> Leveraging technology to make a positive impact across vitally important areas, such as healthcare, education, and national security, is core to Veritas. We are proud stewards of national assets, improving the quality of healthcare while reducing cost, advancing our educational system, and protecting our nation and allies. For more information, visit www.veritascapital.com.

20. On March 7, 2022, Defendants caused to be filed with the SEC a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") in connection with the Proposed Transaction.

### B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

21. The Solicitation Statement, which recommends that Houghton shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Houghton's financial projections; and (ii) the financial analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion.

22. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Reasons for the Recommendation of the Special Committee and the Board; (ii) Opinion of the Company's Financial Advisor; and (iii) Certain Company Forecasts.

23. The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., New York City time, on April 1, 2022 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be

5

disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Houghton's Financial Projections

24. The Solicitation Statement omits material information concerning Houghton's financial projections.

25. With respect to the Company's financial projections, the Solicitation Statement fails to disclose: (1) all line items underlying each set of the Company's financial projections; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection Proposed Transaction.

27. When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC

Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Evercore's Analyses

29. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Evercore.

30. The Solicitation Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*": (1) the terminal values of the Company; (2) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 3.0% to 4.0%, and (ii) discount rates ranging from 11.50% to 13.50%; (3) the Company's estimated net debt as of March 31, 2022; (4) the number of fully diluted shares of the Company's common stock; and (5) the tax asset estimates provided by the Company, and the incremental value of tax attributes.

31. With respect to Evercore's "*Selected Public Company Trading Analysis*" and "*Selected Transactions Analysis*," the Solicitation Statement fails to disclose the individual

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 12, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

multiples and financial metrics of each company and transaction Evercore observed in its analyses.

32. With respect to Evercore's "*Equity Research Analyst Price Targets*" analysis, the Solicitation Statement fails to disclose: (1) the individual price targets observed by Evercore in its analysis; and (2) the sources thereof.

33. With respect to Evercore's "*Premiums Paid Analysis*," the Solicitation Statement fails to disclose the transactions observed and the premiums paid therein.

34. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

35. Without the information described above, the Company's shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

36. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

37. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

38. During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

39. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

40. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

41. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

42. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

43. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. Defendants caused the Solicitation Statement to be issued with the intent to solicit

shareholder support for the Proposed Transaction.

46. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

47. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

48. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

50. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the

10

Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

51. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

52. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful

11

information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

57. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 12, 2022	Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*